LELITO v MONROE

Docket No. 270618. Submitted December 12, 2006, at Lansing. Decided
    December 28, 2006, at 9:05 a.m. Leave to appeal denied, 477 Mich
    1116.

Ardis Lelito, personal representative of the estate of Helen Rich,
    deceased, brought an action in the Livingston Circuit Court
    against Shirley Monroe, alleging negligence and strict liability for
    leaving a firearm in a location accessible to Rich's boyfriend, Elick
    Verdulla, a convicted felon, in the home they all shared. Verdulla
    used Monroe's gun to kill Rich. The trial court, David J. Reader, J.,
    granted the defendant's motion for summary disposition, and the
    plaintiff appealed.

The Court of Appeals held:

The trial court did not err in granting the defendant's motion
    for summary disposition because it was not foreseeable that
    Verdulla would use the defendant's gun to kill Rich. 18 USC
    922(g)(1), which forbids felons from possessing firearms, addresses
    possession only in connection with commerce, which is not rel-
    evant here, and MCL 750.224f imposes no duty to refrain from
    possessing firearms on those who come in contact with the felon.
    Although gun owners have a duty to exercise a high degree of care
    when authorizing a gun's use, there is no evidence that the
    defendant authorized Verdulla to use his gun. The rationale
    behind imposing a duty to keep firearms from children does not
    extend to felons.

Affirmed.

NEGLIGENCE — FIREARMS — DUTY OF CARE — FELONS.

A gun owner who leaves a weapon in a location accessible to a felon
    but has no reason to foresee the felon's misuse of the weapon is not
    civilly liable for such misuse.

*Robert H. Roether* for the plaintiff.

*Conlin, McKenney & Philbrick, P.C.* (by *William M.
Sweet*), for the defendant.

Amici Curiae:

*Crowell & Moring, LLP* (by *Michael J. Goecke, Clifford J. Zatz, Valerie Hinko,* and *Carrie Fletcher*), and Brady Center to Prevent Gun Violence Legal Action Project (by *Daniel R. Vice*) for Brady Center to Prevent Gun Violence and Michigan Million Mom March Chapter of the Brady Campaign.

Before: SERVITTO, P.J., and FITZGERALD and TALBOT, JJ.

PER CURIAM. Plaintiff appeals as of right the trial court's order granting summary disposition in defendant's favor and dismissing plaintiff's complaint. Because we find that an individual gun owner who leaves a weapon in a location accessible to a convicted felon but has no reason to foresee the felon's misuse of the weapon is not civilly liable for the felon's misuse of the weapon, we affirm.

The facts in this matter are straightforward and undisputed. Helen Rich and her boyfriend, Elick Verdulla, moved in with defendant and his wife when Rich fell upon hard times. Defendant owned several firearms, including a black-powder revolver, which he kept in a cabinet in his bedroom. Verdulla was aware of where the revolver was kept, and, on a day when defendant and his wife were absent from the home, he retrieved the revolver, and shot and killed Rich.

Plaintiff initiated suit against defendant, alleging strict liability and negligence in leaving a loaded firearm in a location known to Verdulla, whom defendant knew to be a convicted felon. Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that no strict liability applied in this matter and that defendant was not negligent with respect to plaintiff's decedent. After oral argument, the trial court

granted defendant's motion for summary disposition and dismissed plaintiff's complaint with prejudice.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Corley v Detroit Bd of Ed,* 470 Mich 274, 277; 681 NW2d 342 (2004). A motion made under MCR 2.116(C)(10) tests the factual support for a claim, *Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151 (2003), and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, *Miller v Purcell,* 246 Mich App 244, 246; 631 NW2d 760 (2001). A genuine issue of material fact exists when the record, drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue on which reasonable minds could differ. *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003). When deciding a motion for summary disposition under this rule, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(5); *Ritchie-Gamester v City of Berkley,* 461 Mich 73, 76; 597 NW2d 517 (1999).

Plaintiff presents essentially only one argument on appeal—that the foreseeability that felons may misuse firearms, recognized by both Michigan and federal law, creates a duty to take reasonable steps to prevent a loaded firearm from being accessible to a known felon. Whether an individual gun owner who leaves a weapon in a location accessible to a felon may be held civilly liable for the convicted felon's misuse of the weapon appears to be an issue of first impression in Michigan.

To establish a prima facie case of negligence, a plaintiff must show (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached the

duty, (3) that the defendant's breach of the duty caused the plaintiff injuries, and (4) that the plaintiff suffered damages. *Teufel v Watkins,* 267 Mich App 425, 427; 705 NW2d 164 (2005). "Duty" is defined as the legal obligation to conform to a specific standard of conduct in order to protect others from unreasonable risks of injury. *Burnett v Bruner,* 247 Mich App 365, 368; 636 NW2d 773 (2001). "In deciding whether a duty should be imposed, the court must look at several factors, including the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Hakari v Ski Brule Inc,* 230 Mich App 352, 359; 584 NW2d 345 (1998). There can be no actionable negligence if no duty exists. *Id.* The threshold issue of whether a duty exists is determined by the court as a matter of law. *Graves v Warner Bros,* 253 Mich App 486, 492; 656 NW2d 195 (2002).

It is axiomatic that, in general, there is no legal duty obligating one person to aid or protect another, and, in particular, "an individual has no duty to protect another from the criminal acts of a third party in the absence of a special relationship between the defendant and the plaintiff or the defendant and the third party." *Graves, supra* at 493. This is because "[c]riminal activity, by its deviant nature, is normally unforeseeable." *Papadimas v Mykonos Lounge,* 176 Mich App 40, 46-47; 439 NW2d 280 (1989). However, our Supreme Court has noted, " 'Even criminal conduct by others is often reasonably to be anticipated.' " *Moning v Alfono,* 400 Mich 425, 442 n 16; 254 NW2d 759 (1977), quoting 2 Restatement Torts, 2d, § 281, comment f (internal quotation omitted). This Court has also held that "a possessor of land or property has a special relationship raising a duty to protect invitees, . . . tenants[,] or their agents from unreasonable risk of physical harm, including protec-

tion from foreseeable intentional criminal acts of third parties." *Blake v Consolidated Rail Corp*, 129 Mich App 535, 547; 342 NW2d 599 (1983), citing 2 Restatement Torts, 2d, § 302B, p 88, and § 314A, p 118. Because the relationship between defendant and Verdulla and plaintiff's decedent could be construed as landlord-tenant, the existence of duty in this case hinges on the foreseeability of Verdulla's seizing defendant's firearm with violent intentions toward the decedent.

In support of her argument that Verdulla's actions were foreseeable, and that liability should thus be imposed on defendant, plaintiff directs this Court to 18 USC 922(g)(1) and MCL 750.224f. 18 USC 922(g)(1) states, "It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Notably, this statute concerns commerce, and this Court can find no basis to regard Verdulla's possession of defendant's gun as taking place "in or affecting commerce."

MCL 750.224f prohibits a person convicted of a felony from possessing a firearm less than three years after that person has served the attendant term of incarceration, paid all fines, and successfully completed all conditions of parole. The prohibition is for a term of five years if the felony in question involves, among other things, unlawful possession of a firearm. This Court has identified Michigan's felon-in-possession statute as achieving "the legitimate legislative purpose of keeping guns out of the hands of those most likely to use them against the public." *People v Swint*, 225 Mich App 353, 374; 572 NW2d 666 (1997).

Importantly, the above statutes impose on the felon a duty to refrain from possessing firearms; they impose no duty on the felon's friends, family, neighbors, etc., either to police that felon in that regard, or to suppress their own lawful access to firearms when a felon is present. Moreover, the Legislature's recognition that felons may be more likely to misuse weapons does not equate with an individual's knowledge or ability to foresee that a specific felon *will* misuse a weapon.

Defendant makes the obvious point that, "if the murder was actually foreseeable, certainly [the decedent] would not have invited her future murderer to live with herself . . . ." It would follow that defendant had no duty to anticipate an outbreak of violence from Verdulla that plaintiff's decedent (who asked that Verdulla be allowed to move into the house) apparently did not. To contrast with his tenant's apparent trust of Verdulla, defendant had only a general understanding that the latter had been in prison. Some activities generating prison sentences in this state, however, are nonviolent in nature (e.g., cultivating marijuana), so knowledge of a history of imprisonment does not necessarily mean knowledge of a history of violence. An individual's general knowledge that a person has served a prison sentence is not sufficient to make it reasonably foreseeable that the person will appropriate and then misuse a firearm if its location is known.

Plaintiff also cites *Riste v Helton*, 139 Mich App 404; 362 NW2d 300 (1984), to argue that defendant is liable for Rich's death. In that case, the victim of a shooting recovered damages for negligence from an individual who shot the victim in the abdomen, and also from the gun's owner. *Id.* at 406-407. This Court agreed that a loaded .38-caliber revolver was a dangerous instrumentality whose owner was obliged "to exercise a high

degree of care when using the gun or authorizing its use." *Id.* at 410. In what this Court regarded as a close question, it held that, in light of evidence that the gun owner had the opportunity to see her gun in the possession of the shooter, there existed a question for jury resolution whether she had failed to take reasonable steps to prevent its misuse by that person. *Id.* at 410-411.

*Riste* is distinguishable from the instant matter in that it concerned a gun owner's possible authorization of another to use a gun. Here, however, there is no evidence that defendant actively authorized, or passively permitted, Verdulla to use his gun at all. Instead, this matter concerns only how defendant kept or stored his gun. There being no genuine issue of material fact whether it was foreseeable to defendant that Verdulla would seize his firearm and turn it on the decedent, defendant owed no duty regarding storage of the gun, and there is thus no basis for imposing liability on defendant.

Plaintiff's observation that we have recognized a general duty to keep children from possessing firearms leads to no different result. This Court has held that a premises owner storing a loaded firearm in his garage is exposed to liability when a child trespasser discovers the weapon and accidentally shoots another with it. *Gilbert v Sabin*, 76 Mich App 137, 148; 256 NW2d 54 (1977). The Legislature has likewise recognized that firearms are generally too dangerous to be entrusted to children. MCL 750.234f (prohibiting possession of a firearm by a minor but for narrowly drawn exceptions). The law thus does impose on a gun owner a special obligation to keep his or her firearms from a child's— even a trespassing one's—ready access. However, this special duty not to tempt children with firearms stems

from children's "inability to appreciate danger and . . . inclination to explore without regard to the risk," *Moning, supra* at 445—in other words, their lack of adult judgment and capacity for restraint.

In contrast, the felon-in-possession statute signals not the legislative determination that felons similarly lack capacity, but rather that, having committed a felony, they have, at least temporarily, shown themselves "most likely" to misuse guns, see *Swint, supra* at 374, and thus have forfeited their right to keep and bear arms until certain periods have passed and conditions are satisfied. We decline, then, to follow plaintiff's suggestion that convicted felons and children fall into the same category where loaded firearms are accessible and liability for their misuse is at issue.

Affirmed.